[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action by complaint returnable to this court December 15, 1992. She seeks a dissolution of the parties' marriage on the ground of its irretrievable breakdown, custody of the parties' minor children, child support, alimony, a property assignment, and other relief, as on file. The defendant husband appeared by counsel, filed an answer admitting the allegations of the complaint, and filed a cross complaint alleging that the plaintiff had been intolerably cruel to him. He also seeks a dissolution of the marriage, custody of the minor children, child support, alimony, a fair and equitable property distribution, and other relief, as on file.
Each party's original counsel was replaced by present trial counsel, and counsel was appointed to represent the minor children.[1] The issue of child custody and visitation was referred to Family Services for study and recommendation.
At trial, both spouses testified, submitted financial affidavits and written proposed orders, and introduced documentary materials into evidence which included an appraisal report, a statement of pension benefits, and earnings records. The child's attorney submitted written proposed orders. A number of other witnesses testified who were all called by the defendant. The taking of testimony was completed on May 18, 1994; however, the plaintiff was granted one week within which to file an affidavit respecting her claim for attorney's fees. The defendant objected to the affidavits filed by the plaintiff's present and prior counsel and the parties were heard. All parties made oral argument and waived the submission of briefs.
The court finds the following facts from the evidence. CT Page 6082
The wife, whose birth name was Donna Bailey, and whose prior married name was Donna Barker, married the husband on February 10, 1978 in Waterford, Connecticut. She has resided continuously in this state for at least one year before the date the complaint was filed, November 25, 1992. The parties have one minor child issue of the marriage, Mattel, born December 16, 1978. No other minor children were born to the wife since the date of the marriage.
This is the second marriage for each spouse; their first marriages ended in divorce. The wife has two sons, issue of her first marriage, Matthew and Donnavan, both of whom were adopted by the husband in 1980 or 1981. Each son has reached his majority. Neither spouse nor the minor child are or have been recipients of public assistance. All statutory stays have expired and this court has jurisdiction.
The wife is 37 years of age, in good health, and has a high school diploma by G.E.D. She worked throughout the marriage as a day care attendant and caregiver for young children, and mentally ill and retarded persons, on a casual or part time basis. She has also worked as a receptionist in a doctor's office and as a playground aide. She held none of these jobs for more than one year, and her maximum earnings were $10 per hour and $200 per week. She now works part time in a similar job as an aide and earns $77[2] per week gross.
The husband is 42 years of age and is a high school graduate. He also has two years of college courses in business and liberal arts. He suffers from the effects of various job related injuries, and walks with a noticeable limp. However, the residual effects of his injuries do not appear to adversely affect his ability to work. He has been employed since before the marriage as a carpenter, first for General Dynamics Corp., for about 15 years, until he was laid off in 1989. From then until now, he has been employed as a union carpenter in the construction trades. He has been subject to sporadic layoffs, one of which lasted 7 months. He now is unemployed due to lack of work, but hopes to resume full time employment within the next few weeks. He receives $337 per week gross in unemployment compensation benefits, and nets $302 per week.
In 1993, he earned approximately $25,000 gross, and in the first quarter of 1994, he earned $12,133 gross, $9,179 net after deductions for federal and state income taxes, social CT Page 6083 security and union dues. For the latter period, this translates to an average of $933 per week gross and $706 per week net; his base pay is about $19 per hour for a 40-hour week, and in some weeks in 1994 he had gross weekly earnings ranging from $1,055 to $1,313, including overtime.
This marriage was troubled almost from its very beginning. The parties contracted a sexually transmitted disease. They strongly disagreed and heatedly argued about the manner of discipline of their children. The husband was domineering and attempted to exert excessive control over the wife and the children. The wife had drinking problems, and began an affair. She also had significant problems in dealing with the husband's family, and never had a good relationship with them. The husband moved out of the family home, which was in a `family compound' surrounded by homes occupied by his parents and other relatives.
In 1993, the wife left the home with the children, and moved in with her boyfriend, with whom she now resides. The husband moved back into the family home. The couple has been separated since 1992, and have developed a tremendous level of animosity toward each other.
The court concludes that the marriage has broken down irretrievably. On the state of the evidence, the court further concludes that each spouse bears substantial responsibility and blame for that breakdown; the court is however, unable to apportion more of that blame to either spouse, and it would serve no useful purpose to do so.
Unfortunately, the parties vigorously litigated this case from its inception, both pendente lite and at trial. At the same time their three children were suffering greatly, with emotional and school problems, and one had involvement with the criminal justice system. They each changed attorneys and spent far too much time, money and effort to this litigation, all of which could have been devoted to other more worthwhile goals, such as the best interests and needs of their children, which in the court's view took a back seat.
Each failed to comply with court orders: the husband, by failing to attend the Parent Education Program established under 1993 Public Acts, No. 93-319; the wife, by failing to turn over to him his puppy's American Kennel Club (AKC) papers and CT Page 6084 $200 from the sale of certain puppies. The court does not find either spouse's explanation for their noncompliance credible.
Mattel, who is now 15 and one half years old, lives with her mother and desires no contact with her father. The child's attorney and the family services officer recommended that her sole custody be with the mother, and that visitation or other contact with the father be expressly subject to Mattel's wishes. The defendant professes his love and affection for all three children, and has announced that he would `always be there for them' and has let them know it. At the same time, he maintains an unlisted, unpublished telephone number, which he has not given to them, making it necessary for them to contact him through others should they wish or need to talk with him.
The court finds that Mattel is of sufficient age, maturity and capability to make an intelligent preference with respect to visitation, under the circumstances of this case.
The defendant asserts that a substantial cause of the marital breakdown was the schism created between him and the parties' three children. He further claims that as he was on good terms with them prior to the couple's separation, the wife must have brainwashed or poisoned their minds against him, so that they no longer desire any contact with him. He argues that there could be no other explanation. The court is not persuaded by this argument, as there was no credible evidence, direct or circumstantial, of any actions of the wife which have interfered with his relationship with the children. On the contrary, there was considerable evidence that he himself may have been the architect of the disruption. He initiated surveillance and videotaping of his wife's and children's activities, causing them to jury rig barriers or screens to protect their privacy. Eventually, the wife removed herself and the children from the home they had resided in for a good part of their young lives. He called the police on the children when they were engaged in play in their own backyard; and, he insisted on umpiring softball games in which Mattel's team was to play, despite her strong protestations. The defendant has not sustained his burden of proof on this point.
The only assets of significant value that the parties have acquired during the marriage are:
The jointly owned family home at 223 Bloomingdale CT Page 6085 Road, Waterford, Connecticut (Quaker Hill). The parties agreed upon its value of $121,000, and an appraisal report was introduced into evidence. Plaintiff's Exhibit B. After subtraction of the first mortgage balance of $17,800, it has an equity of $103,200. The house lot was acquired by gift from the defendant's parents, and was worth about $15,000 at the time of the gift. The couple obtained a construction mortgage of $28,000, and the wife contributed about $1,000 from the proceeds of her divorce settlement. The husband contributed some additional funds, and they worked together in building their home.
The husband has a 1992 truck with no equity, $137 in the bank, an annuity through his labor union valued at $11,000 as of the trial date, and a retirement benefit from his General Dynamics employment which will provide him with $298 per month at age 65. The benefit is based on his membership in the retirement plan from 1973 to 1989, a total of 14 years and 11 months.
The wife reports on her financial affidavit cash in banks of $166; household furnishings of $1,520; and a 1988 Toyota motor vehicle worth $5,500 with no lien.
Against these assets the husband reports $28,040 in liabilities, $25,700 of which is due to family members, and $463 to the child's attorney; the wife reports $24,014 in liabilities, of which $5,249 is due to her past and present attorneys, $540 to the child's attorney and $3,000 to her boyfriend.
The wife claims an arrearage due from the defendant on account of child support in the amount of $2,062. She has not provided any ledger, calculation or other documentation in support of her testimony. The court finds that she has not met her burden of proof as to the amount or existence of any arrearage.
The husband claims that the wife stripped the house of a large number of his personal belongings and other items of personal property to which he is entitled to. The wife denies that she took any of his items, and claims entitlement to items she concedes she did take. The husband provided no verification or supporting evidence relating to the items he claims ownership of, or that any of his goods are in the wife's possession, or CT Page 6086 that she actually took them. This, although he claims to have videotaped the wife to `see where his things were going', and the family home, where these items apparently were, was in full view of members of his family. He simply has not met his burden of proof on the issue of entitlement to the personal property claimed. The court has however, considered the items conceded to be in the wife's possession in making the orders hereinafter set forth.
The wife concedes that she has not turned over to the husband the sum of $200 or the AKC puppy papers, and the court finds that he is justly entitled to both.
The court also finds that the defendant is liable for a past bill due Elmcrest Hospital, as a result of prior pendente lite orders, not to exceed $703.
The wife has a demonstrable earning capacity and chose not to seek full time employment or better paying opportunities. She explained that the demands of this litigation kept her from doing so. The court finds this testimony improbable.
The spouses are about on a par with employability; the husband has superior vocational skills, earning capacity and earnings than the wife. He also has the safety net of union membership and benefits, and his retirement plan. He thus has a greater opportunity than she has to acquire capital assets and income in the future. He has also been the recipient of substantial gifts and loans from members of his family.
The husband's monetary contributions to the acquisition, preservation and appreciation in value of the parties' assets exceed those of the wife; at the same time, the court must recognize the wife's nonmonetary contributions to the marriage, including those of homemaker and child caregiver, which were greater than those of the husband.
Although the wife currently resides with her male companion, and receives some financial assistance from him, it is evident that she will need some short term assistance to meet her needs and those of the minor child. I reach this conclusion after consideration of the child support order agreed upon by the parties, the wife's earning capacity, even if she worked full time, her weekly living expenses and liabilities, and the other financial orders entered, in the light of the husband's CT Page 6087 ability to pay and earning capacity.
The court has considered all of the evidence and its findings in the light of the criteria contained in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84. The court has also considered the income tax implications and consequences of the financial awards, and enters the following orders:
1. A decree dissolving the marriage shall enter on the ground of its irretrievable breakdown.
2. Sole custody of the minor child shall be with the mother. Rights of visitation and contact of the father with the child shall be in accord with the child's preference. The father shall be entitled to access to the minor child's academic and non-privileged medical records, pursuant to General Statutes § 46b-56 (e). This shall specifically exclude access to psychological, psychiatric and other records relating to the child which are privileged from disclosure by, law, without the child's consent.
3. The father shall pay as child support a sum equal to 25.26% of his net income as that term is defined in the child support guidelines, as agreed upon by the parties, and which is in accord with the guidelines effective June 1, 1994. Said support order shall be secured by an immediate wage garnishment at the present support payment of $77 per week. The defendant is also ordered to provide to the plaintiff copies of his pay stubs or other appropriate verification of his earnings not less often than every ninety (90) days, commencing October 1, 1994. He shall pay any shortfall and be credited with any overpayment in thirteen (13) equal amounts during the thirteen (13) weeks after each quarterly recalculation. So long as he is current with his child total support obligation as of the end of any calendar year, he may claim the dependency exemption for said minor child for that year for income tax purposes.
4. The father shall maintain the child as a beneficiary of his employment/union related health and medical insurance coverage, and each parent shall be responsible for one-half of the unreimbursed, uncovered health expenses for the minor child. An order pursuant to General Statutes § 46b-84 (c) is entered.
5. The father shall pay the Elmcrest Hospital bill, CT Page 6088 not to exceed $703, within six months from the date hereof. In the event he has not paid his full share of any uncovered or unreimbursed health care provider bills for the minor children, as ordered pendente lite, or has diverted insurance company checks to other purposes, then he shall save the wife harmless from such health provider bills.
6. As the matters of custody and visitation have been dealt with, the court enters no order with respect to the defendant's participation in the parent education program, but urges him to voluntarily participate therein.
7. One half (1/2) of the defendant's union annuity valued as of May 18, 1994 is assigned to and vested in the plaintiff by Qualified Domestic Relations Order (QDRO); one third (1/3) of the defendant's General Dynamics retirement plan monthly benefit, valued as of May 18, 1994, is also assigned to and vested in the wife by QDRO. The court shall retain jurisdiction over these orders to ensure compliance with applicable law.
8. The plaintiff shall transfer to the defendant by quitclaim deed, all her right, title and interest in and to the premises known as No. 223 Bloomingdale Road, Waterford, Connecticut (Quaker Hill), subject to the mortgage and other encumbrances thereon, which he shall pay and save her harmless therefrom. He shall simultaneously execute and deliver to her a promissory note in the amount of $36,500, with interest at the rate of four (4%) percent per annum, payable in equal monthly payments of $250 commencing June 15, 1994, and on the 15th of each month thereafter, until fully paid. Said note shall be secured by a second mortgage on the premises.
Said note and mortgage shall provide for a thirty (30) day default clause for the performance of any obligation created thereby; that interest shall accrue at the rate of eight (8%) percent per annum in the event of default; for acceleration of the unpaid installments and for attorney's fees in the event of default; that a default in the payment of any prior mortgage or the real estate taxes shall constitute a default of the mortgage herein, and that the wife shall be named as a mortgage loss payee on adequate property insurance which the defendant shall maintain.
The unpaid principal balance and any accrued interest CT Page 6089 thereon, if not sooner paid, shall be immediately due and payable on the first to occur of the following: remarriage or death of the defendant; sale or transfer of the mortgaged premises; or his ceasing to reside there as his principal residence, or, July 1, 1999.
9. The defendant shall pay to the plaintiff the sum of $15 per week as periodic alimony, taxable to her and deductible by him, for a period of three years. The court believes that by that time, the minor child will have reached her majority and the plaintiff, with her earnings and mortgage income, will be self sufficient. The duration of said alimony payments shall not be modifiable, and they shall terminate upon the death of either party or the wife's remarriage or pursuant to the provisions of § 46b-86 (b).
10. Each party shall take, have and own the personal property in their respective possession, free of all claims of the other.
11. Each party shall be liable for the obligations shown on their respective financial affidavits, except as otherwise provided herein, and indemnify and save the other harmless therefrom.
12. Each party shall pay one half (1/2) of the minor child's attorney's fees, including the amounts shown due and owing on their respective financial affidavits.
13. The plaintiff shall turn over to the defendant the AKC papers within ten (10) days hereof.
14. The amount of $200 due the defendant from the plaintiff shall be offset against and reduce the first four monthly mortgage payments due to her by $50 each until paid.
15. The defendant shall be entitled to his firearms in the custody of the police department and it is ordered that they be turned over to him forthwith.
16. The defendant shall pay toward the plaintiff's total attorney's fees the sum of $1,800 at the rate of $100 per month, beginning six (6) months from the date of this decree, until paid; the court has considered the total financial resources of the parties, their respective financial abilities CT Page 6090 and, as stated, the criteria in § 46b-62, and the court finds that a denial of counsel fees in toto to the wife would undermine the other financial awards herein.
17. The wife's birth name of Donna Bailey shall be restored.
Teller, J.